Maria BLANCO, Appellant,

v.

Ernesto BOLANOS, Appellee.

No. 08–99–00104–CV.

Court of Appeals of Texas,
El Paso.

May 25, 2000.

Ken Slavin, Brower & Slavin, El Paso, for appellant.

Thomas S. Hughes, El Paso, for appellee.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## O P I N I O N

ANN CRAWFORD McCLURE, Justice.

This restricted appeal arises from a post-answer default judgment in a divorce proceeding. In the final decree of divorce, the trial court appointed Ernesto Bolanos as sole managing conservator of the couple's minor child, granted a money judgment against Maria Blanco for "arrears" in the amount of $4,409.86, and denied Blanco visitation rights until she requested such rights personally before the court. For the reasons stated below, we reverse and remand.

## FACTUAL SUMMARY

On April 1, 1997, Bolanos filed his original petition for divorce, requesting that he and Blanco be appointed joint managing conservators of their minor child. Blanco filed a timely answer denying that she and Bolanos were ever married and presenting a cross-petition to establish paternity of their child and to request that she be appointed sole managing conservator. Over one year later, on May 13, 1998, Blanco's attorney, Enrique Pena, filed a motion to withdraw as counsel in which he provided Blanco's last known address. Two days later, Bolanos filed a motion for temporary orders, alleging that Blanco was prohibiting him from exercising visitation with the child. On May 18, the trial court signed the order of withdrawal of counsel. A hearing on temporary orders was conducted on May 27. Blanco did not appear at that hearing and the record does not reveal a reason for her absence. On June 6, the trial court signed temporary orders appointing Bolanos as temporary sole managing conservator, instructing Blanco to immediately release the child to Bolanos, ordering that Blanco have no visitation rights until she appeared personally before the court, and directing the parties to keep the other party fully informed of any change in their place of residence. At some point thereafter, Blanco moved with the child, thereby forcing Bolanos to incur considerable expense to retrieve his son.[1]

On September 16, 1998, Bolanos requested the first trial setting and the case was set on the docket for October 1, 1998. Blanco did not attend the final hearing and it appears from the record that she was representing herself *pro se* at the time. When the trial court asked Bolanos' counsel if Blanco had been provided notice of

---

1. At the final hearing, Bolanos testified that despite the court's temporary orders, Blanco took the child and fled to Hawaii without giving Bolanos any prior notification of her intent to do so and without informing him of her whereabouts. As a result, Bolanos hired a private investigator to locate his son, incurring "a great deal of expenses." For approximately six months, Bolanos was unable to communicate with his son because he did not know where he was. Bolanos ultimately flew to Hawaii and filed a writ of habeas corpus with a Hawaii court to enforce the Texas temporary orders. The Hawaii court granted the relief sought and Bolanos returned to El Paso with his son. Bolanos's expenses to retrieve his son totaled $4,409, the amount of the "arrears" awarded in the final decree.

the hearing, counsel answered in the affirmative and presented the testimony of his own paralegal, Nancy Torres. Torres testified that on September 22, 1998, she attempted to contact attorney Edward JSF Smith[2] to notify him of the final hearing. She faxed a copy of the trial setting notice to Smith's paralegal, and she spoke with Smith's secretary.

Trial then commenced. Bolanos testified that because Blanco absconded to Hawaii with his son, he was seeking to be appointed sole managing conservator. On October 13, 1998, the trial court signed the divorce decree, which implicitly found that the couple had been married, granted the divorce, appointed Bolanos as sole managing conservator, denied Blanco any visitation rights, and granted a judgment against her for Bolanos' Hawaii expenses. Blanco filed no post-judgment motions or requests for findings of fact and conclusions of law. On April 9, 1999, less than six months after the divorce decree was signed, Blanco filed her notice of restricted appeal.

### NONCOMPLIANCE WITH TEX.R.CIV.P. 245

■ The first of three appellate issues presented is whether Blanco received proper notice of the final hearing pursuant to Rule 245. Because it is dispositive of our decision, we need not address the remainder. When a party has answered in a divorce case, she is entitled to notice of trial pursuant to Rule 245. *Turner v. Ward*, 910 S.W.2d 500, 505 (Tex.App.—El Paso 1994, no writ); *see Platt v. Platt*, 991 S.W.2d 481, 483 (Tex.App.—Tyler 1999, no pet.)(stating that when defendant has filed a timely answer, he or she is entitled to notice of trial setting as a matter of due process). The rule provides that the "court may set contested cases on written request of any party … with reasonable notice of not less than forty-five days to the parties of a first setting for trial…." TEX.R.CIV.P. 245. A trial court's failure to comply with the rules of notice in a contested case deprives a party of the constitutional right to be present at the hearing, to voice her objections in an appropriate manner, and results in a violation of fundamental due process. *Platt*, 991 S.W.2d at 483. Thus, if the respondent does not have notice of the trial setting as required by Rule 245, the post-answer default judgment should be set aside because it is ineffectual. *See id.* at 484.

■ On the other hand, it is presumed that the trial court will hear a case only when notice has been given to the parties. *Turner*, 910 S.W.2d at 505. To overcome this presumption, an appellant must affirmatively show a lack of notice. *Hanners v. State Bar of Texas*, 860 S.W.2d 903, 908 (Tex.App.—Dallas 1993, no writ); *see Turner*, 910 S.W.2d at 505. This burden is not discharged by mere allegations, unsupported by affidavits or other competent evidence, that proper notice was not received. *Hanners*, 860 S.W.2d at 908. Here, even if we were to assume that a facsimile notice to her Hawaii attorney is sufficient to comply with TEX.R.CIV.P. 21a, the record affirmatively demonstrates that Blanco received less than the forty-five days mandated by Rule 245. *See Osborn v. Osborn*, 961 S.W.2d 408, 411 (Tex. App.—Houston [1st Dist.] 1997, writ denied)(noting that if judgment is effectively rebutted by other evidence in record, presumption of proper notice is no longer taken to be true). Torres testified at the final hearing on October 1 that she provided notice to Smith by telephone and by facsimile on September 22. Additionally, the record reveals that Bolanos did not

---

2. At oral argument, it was explained that Mr. Smith represented Blanco in connection with the Hawaii proceedings. Nowhere in the record is there evidence that anyone, including Smith, represented Blanco after Pena withdrew as counsel and before her appellate attorney filed his entry of appearance. Torres did not testify that notice was sent to Blanco's last known address, as provided in Pena's motion to withdraw as counsel and in the court's order on that motion.

even file his setting request until September 16, a mere fifteen days prior to the final hearing. Because Blanco did not receive notice of the trial setting as required by Rule 245, we sustain this issue. We reverse the judgment and remand the case to the trial court for a new trial.