In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00114-CR


______________________________




STEPHEN CLAY JOHNSTON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 6th Judicial District Court


Lamar County, Texas


Trial Court No. 17832




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 Stephen Clay Johnston appeals the trial court's denial of his motion for forensic DNA testing. 
On June 2, 2000, Johnston was convicted of two aggravated assault offenses, retaliation, and two
failure to appear/bail jumping offenses. He was sentenced to three years' imprisonment for each
offense. The sentences were ordered to run concurrently. This Court dismissed Johnston's appeals
for want of jurisdiction.

 In September 2001, Johnston filed a pro se motion and supporting affidavit seeking post-conviction DNA testing under Chapter 64 of the Texas Code of Criminal Procedure. The State filed
a response and supporting affidavit. The trial court overruled Johnston's motion without a hearing
and issued findings of fact and conclusions of law. (1)

 In his motion and supporting affidavit, Johnston alleged the following: (1) that on June 2,
2000, he pled guilty to aggravated assault and was sentenced to three years' imprisonment; (2) that
the State had custody of evidence that, at the time of his prosecution, was known to contain
biological material that, if subjected to scientific testing, would more likely than not establish the
identity of the person who committed the offense or exclude a person from the group of persons who
could have committed the offense; see Tex. Code Crim. Proc. Ann. art. 38.39(b) (Vernon Supp.
2003); (3) that the State should have preserved the evidence under Article 38.39; (4) that there is a
reasonable probability he "would not have been prosecuted or convicted if exculpatory results had
been obtained through DNA testing"; and (5) that DNA testing should be conducted on the evidence
under Chapter 64 of the Texas Code of Criminal Procedure.

 The State filed a response and supporting affidavit from William Harris, an assistant county
attorney for Lamar County, alleging (1) that on June 2, 2000, Johnston pled guilty to, and was
sentenced for, two aggravated assault offenses, and to retaliation and two failure to appear/bail
jumping offenses stemming from the aggravated assault offenses; (2) that on May 10, 2001, this
Court dismissed Johnston's appeals for want of jurisdiction; (3) that the records from Johnston's case
indicate there was evidence possibly containing biological material; (4) that the evidence was
destroyed in the routine course of business of the Paris Police Department; (5) that no party
requested forensic DNA testing either before Johnston's trial or after his conviction and sentencing;
(6) that at no time did a party request the evidence be preserved for post-conviction analysis; (7) that
Article 38.39 did not apply to Johnston; and (8) that Johnston did not meet the requirements for
forensic DNA testing under Chapter 64.

 In its findings of fact, the trial court found (1) that Article 38.39 was enacted after Johnston
was convicted; (2) that evidence possibly containing biological material was collected during the
investigation of the offenses; (3) that the evidence was physically destroyed in the routine course of
business by the Paris Police Department on or about June 15, 2001, after this Court dismissed
Johnston's appeals; (4) that no party previously requested forensic DNA testing or that the evidence
be preserved; (5) that the State did not act in bad faith in destroying the evidence; (6) that an
evidentiary hearing would provide no additional facts necessary to the trial court's resolution of
Johnston's motion; and (7) that Johnston's identity was not at issue in his conviction.

 In its conclusions of law, the trial court concluded (1) that Article 38.39 does not apply to
Johnston's case; (2) that Article 38.39 does not provide Johnston any avenue of post-conviction
relief; (3) that Johnston cannot establish by a preponderance of evidence that a reasonable probability
exists he would not have been prosecuted or convicted if exculpatory results had been obtained
through DNA testing; (4) that sufficient probable cause existed to arrest, charge, and indict Johnston
for aggravated assault and that he would have been prosecuted notwithstanding the absence of
forensic DNA testing; and (5) that Johnston's motion was made to unreasonably delay the execution
of his sentence and the administration of justice.

 On appeal, Johnston contends that Article 38.39 does apply to his case and that he met the
requirements of Chapter 64. In reviewing a trial court's ruling under Chapter 64, we must afford
almost total deference to the trial court's determination of issues of historical fact and of application-of-law-to-fact questions that turn on credibility and demeanor, while reviewing de novo other
application-of-law-to-fact questions. Rivera v. State, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002)
(citing Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Though no other court has so
held, we believe this is also the appropriate standard for reviewing rulings made under Article 38.39.


 Article 38.39(a) provides:

 In a criminal case in which a defendant is convicted, the attorney representing the
state,  a  clerk,  or  any  other  officer  in  possession  of  evidence  described  by
Subsection (b) shall ensure the preservation of the evidence.


Tex. Code Crim. Proc. Ann. art. 38.39(a) (Vernon Supp. 2003). This requirement applies to
evidence that (1) was in possession of the State during the prosecution of the case, and (2) at the time
of conviction was known to contain biological material that, if subjected to scientific testing, would
more likely than not establish the identity of the person committing the offense or exclude a person
from the group of persons who could have committed the offense. Tex. Code Crim. Proc. Ann.
art. 38.39(b).

 The State contends that Article 38.39 does not apply to Johnston's case because he was tried
and convicted before the effective date of the Act. Johnston was convicted June 2, 2000. 
Article 38.39 became effective April 5, 2001. See Act of April 3, 2001, 77th Leg., R.S., ch. 2, § 6,
2001 Tex. Gen. Laws 2, 5. But Article 38.39 contemplates the preservation of evidence for future
trials. It became effective before the evidence in the present case was destroyed, which the trial court
found occurred on or about June 15, 2001.

 Laws that do not amend substantive law by defining criminal acts or providing penalties are
procedural in nature. Ex parte Johnson, 697 S.W.2d 605, 607 (Tex. Crim. App. 1985) (orig.
proceeding). "Procedure" refers to changes in the process by which a criminal case is adjudicated,
as opposed to changes in the substantive law of crimes. Ex parte Scales, 853 S.W.2d 586, 588 (Tex.
Crim. App. 1993) (orig. proceeding) (quoting Collins v. Youngblood, 497 U.S. 37, 45-46 (1990)). 
Procedural statutes control pending litigation from their effective date, absent an express provision
to the contrary. Johnson, 697 S.W.2d at 607-08.

 In Johnson, for instance, the petitioner sought a post-conviction writ of habeas corpus,
contending his conviction for aggravated robbery was void because the jury assessed a fine in
addition to a term of imprisonment. Id. at 606. At the time, the law did not authorize assessment
of a fine for a defendant convicted as a repeat or habitual offender. Id. (citing Bogany v. State, 661
S.W.2d 957 (Tex. Crim. App. 1983), superseded by statute as stated in, Ex parte Youngblood, 698
S.W.2d 671, 672 (Tex. Crim. App. 1985)). Such a sentence was void and could not be reformed;
a new trial was the only remedy. Johnson, 697 S.W.2d at 607.

 The court noted, however, that after the petitioner's conviction the Legislature changed the
statute to allow an appellate court to reform the judgment. Id. (citing Tex. Code Crim. Proc. Ann.
art. 37.10). Because this statute was procedural, the court held it applied to the petitioner's case,
meaning the court could reform the judgment to delete the fine. Id. at 608. 

 Johnston is in substantially the same situation. Like the petitioner in Johnson, Johnston was
convicted at a time when one set of procedural rules prevailed (i.e., those governing the preservation
of evidence after a conviction). Like the petitioner in Johnson, Johnston sought a remedy via a post-conviction proceeding. The petitioner in Johnson could not obtain the remedy available when he
was convicted (i.e., a new trial) because the Legislature had changed the procedural rules to allow
a different remedy.

 There can be little question that Article 38.39 is a procedural statute. When Johnston was
convicted, the State could have destroyed the evidence in the manner then authorized by law. But
when the Legislature added Article 38.39, the evidence, which was not yet destroyed, had to be
preserved according to the statute's terms. We conclude, therefore, the trial court erred to the extent
it concluded Article 38.39 did not apply to Johnston's case because it did not become effective until
after Johnston's conviction.

 However, the trial court could have concluded that Article 38.39 did not apply to Johnston's
case because, at the time of Johnston's conviction, the evidence was not known to contain biological
material that, if subjected to scientific testing, would more likely than not establish the identity of
the person committing the offense or exclude a person from the group of persons who could have
committed the offense. See Tex. Code Crim. Proc. Ann. art. 38.39(b)(2). The trial court found
that at no time did any party request the evidence be subjected to DNA testing or be preserved for
any type of post-conviction analysis.

 Because the trial court's determination that Article 38.39 does not apply to Johnston's case
was not based on the credibility and demeanor of witnesses, we review it de novo. See Rivera, 89
S.W.3d at 59. We hold the trial court did not err in concluding Article 38.39 did not apply to
Johnston's case to the extent its conclusion was based on the theory that, at the time of his
conviction, the evidence was not known to contain biological material that, if subjected to scientific
testing, would more likely than not establish the identity of the person committing the offense or
exclude a person from the group of persons who could have committed the offense. The record
shows that neither Johnston nor the State gave any indication at his trial or immediately afterward
that the evidence could or should be subjected to testing. Further, the evidence was destroyed before
Johnston sought DNA testing under Chapter 64.

 Johnston also challenges the trial court's conclusion that Article 38.39 does not provide him
an avenue for post-conviction relief. Though we need not reach this issue in light of our holding that
the trial court did not err in concluding Article 38.39 did not apply to his case, we must observe that
Johnston does not offer any argument concerning the appropriate remedy if Article 38.39 did apply
and the evidence had been destroyed in violation of the statute.

 Article 38.39, itself, does not provide a remedy when the State destroys evidence without
following the procedure outlined in the statute. See Watson v. State, No. 07-01-0481-CR, 2002 WL
31416064, at *3 (Tex. App.-Amarillo Oct. 28, 2002, pet. filed). In Watson, the court of appeals held
it was without jurisdiction to consider the appellant's contention that he should be released because
the State failed to preserve evidence possibly containing biological material. (2) Id. Such a contention,
the court concluded, amounted to a request for relief on habeas corpus, which it did not have
jurisdiction to grant. Id. Therefore, to the extent Johnston seeks his release, we would have no
jurisdiction to grant him that remedy. See id.

 Johnston also contends the trial court erred in concluding he did not meet the requirements
of Chapter 64. Article 64.03 requires a convicting court to order forensic DNA testing if (1) the
convicting court finds (a) the evidence still exists, is in a condition making DNA testing possible,
and has been subjected to a chain of custody sufficient to establish it has not been substituted,
tampered with, replaced, or altered in any material respect; (b) identity was an issue in the case; and
(2) the convicted person establishes by a preponderance of the evidence (a) that a reasonable
probability exists the person would not have been prosecuted or convicted if exculpatory results had
been obtained through DNA testing and (b) that the requested testing is not made to unreasonably
delay the execution of sentence or the administration of justice. Tex. Code Crim. Proc. Ann.
art. 64.03(a), (b) (Vernon Supp. 2003).

 The trial court found that evidence possibly containing biological material had been
destroyed. Deferring to this finding of historical fact, we conclude the trial court did not err in
refusing to order DNA testing. Because the evidence had been destroyed, the trial court could not
find, as Article 64.03(a)(1)(A) requires, that the evidence still exists, that it is in a condition making
DNA testing possible, or that it has been subjected to a chain of custody sufficient to establish it has
not been substituted, tampered with, replaced, or altered in any material respect. See Tex. Code
Crim. Proc. Ann. art. 64.03(a)(1)(A).

 Johnston contends that the evidence was destroyed in bad faith and that there was police and
prosecutorial misconduct involved. In his affidavit supporting the State's response, Harris recites
that Sergeant Jimmy Steed of the Paris Police Department reported to him that all evidence from
Johnston's case, including the evidence possibly containing biological material, was destroyed. He
asserted the evidence was destroyed in the routine course of business along with other evidence from
other cases.

 The trial court found the evidence was destroyed in the regular course of business of the Paris
Police Department. Deferring to this finding of historical fact, we conclude the trial court did not
err in finding the State did not act in bad faith.

 Because the requirements of Article 64.03(a)(1)(A) cannot be met, we need not consider
Johnston's other issues, in which he contends the trial court erred in finding he did not meet the
requirements of Article 64.03(a)(1)(B) and Article 64.03(a)(2)(A) and (B). 

 We affirm the judgment. 


 Josh R. Morriss, III

 Chief Justice


Date Submitted: December 17, 2002

Date Decided: February 5, 2003


Publish
1. Because Johnston's motion implicated both his aggravated assault convictions, the trial court
docketed two causes and we docketed two appeals. We address the other appeal in a separate
opinion.
2. It should be noted that the application of Article 38.39 was unclear in Watson because the
evidence did not show when the evidence was lost or destroyed, i.e., before or after the effective date
of the statute. Watson v. State, No. 07-01-0481-CR, 2002 WL 31416064, at *2 (Tex. App.-Amarillo
Oct. 28, 2002, pet. filed).



rity="68" SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium Grid 2 Accent 6"/>
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00074-CV

                                                ______________________________

 

 

                                JOSHUA SMITH, D/B/A
FRACTIONAL

TRANSPORTATION, L.L.C.,
Appellant

 

                                                                V.

 

                                 I-30 BUSINESS PARK, LTD., Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the County
Court at Law No. 2

                                                              Hunt County, Texas

                                                      Trial Court No. CC-09-00258

 

                                                                                                   

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            On
November 1, 2008, Fractional Transportation, L.L.C., a Nevada limited liability
company owned by Joshua Smith, leased a building from I-30 Business Park, Ltd.,
to store equipment.  After disputes
developed between the parties,[1]
Smith ceased paying rent on the building. 
On May 8, 2009, the Business Park filed a forcible detainer action
against Smith, in his personal capacity, in a Hunt County justice court.  The justice court authorized alternative
service by posting a notice at the leased facilities.[2]  

            A
no answer default judgment was taken against Smith in justice court.  Smith, however, filed an appeal of the justice
court judgment to the Hunt County Court at Law No. 2.  Smith filed, in the county court at law, an
answer, which included a counterclaim for filing a fraudulent affidavit, and a
motion to dismiss.  On December 9, 2009,
Smith faxed a document titled DEFENDANTS NOTICE TO COURT to the trial court
alleging he was coming down with the flu and requesting that the trial court
either reschedule the hearing or grant Smiths motion to dismiss.  This document was filed on December 10,
2009.  On December 11, 2009, the trial
court signed a post-answer default[3]
final judgment awarding lost rent and lost income in the amount of $13,325.00
and $4,427.63 in attorneys fees to Michael B. Barnard.[4]  Smith filed a motion for new trial on
December 15, 2009, which was overruled by operation of law on February 24,
2009.[5]  See
Tex. R. Civ. P. 329b(c).  After the first motion for new trial was
overruled by operation of law, but before the trial courts plenary power
expired under Tex. R. Civ. P. 329b(e),
the trial court signed, on March 17, 2010, a reformed judgment awarding back
rent of $6550.00 and attorney fees and court costs of $4,427.63.[6]  Smith timely filed another motion for new
trial, which was overruled by operation of law.[7]  Smith filed a notice of appeal to this Court
on June 17, 2010.[8]  After giving notice to the appellee, this
case was submitted without an appellees brief.

            Although
Smiths brief on appeal fails to contain an issues presented section listing
his issues or points of error, we have interpreted his brief as containing six
points of error.  Smith complains (1) the
evidence is factually insufficient, (2) the service of process was defective, (3)
he could not be sued in his personal capacity, (4) the amount of damages
exceeded the jurisdictional limits of the court, (5) the trial court erred in
denying his motion for new trial because a trial de novo in county court
violated his constitutional rights, and (6) the trial court erred in denying
his motion for new trial because no notice of the trial setting was
provided.  We affirm.

(1)        Without
a Reporters Record, We Must Presume the Evidence Is Factually Sufficient

 

            In
his first point of error, Smith complains that the evidence is factually
insufficient.  Smith provides no argument
and cites no authority for this point of error. 
This point of error could be overruled as inadequately briefed.  Further, we note Smith failed to obtain a
reporters record for this appeal.  If
the record is incomplete and the appellant has not complied with Tex. R. App. P. 34.6(c), the appellate
court must presume that the omitted evidence supports the judgment or order
from which the appeal is taken.  In re Estate of Arrendell, 213 S.W.3d
496, 503 (Tex. App.Texarkana 2006, no pet.); see Bennett v. Cochran, 96 S.W.3d 227, 230 (Tex. 2002); Schafer v. Conner, 813 S.W.2d 154, 155
(Tex. 1991) (per curiam).  Without a
reporters record, we must presume the missing record would contain evidence to
support the trial courts rulings on factual sufficiency.  Smiths first point of error is overruled.

(2)        Smith Waived Any
Service Defects by Appearing in the County Court at Law

            In
his second point of error, Smith complains that the service of process was
defective.  Smith alleges service was
only attempted at the storage unit and Business Park never attempted to serve
him at his private residence.  Regardless
of whether Smiths allegations are correct, Smith waived any defects in service
by appealing the judgment of the justice court and filing an answer.  See
Tex. R. Civ. P. 120, 121; see also Baker v. Monsanto Co., 111
S.W.3d 158, 160 (Tex. 2003) (per curiam); Montgomery
v. Chase Home Fin., LLC, No. 05-08-00888-CV, 2009 Tex. App. LEXIS 7020
(Tex. App.Dallas Sept. 2, 2009, no pet.) (mem. op.) (An appeal bond operates
as an answer and appearance in a county court at law . . . .).  Smiths second point of error is overruled.

(3)        Smith Waived the Issue of
Capacity

            In
his third point of error, Smith argues he signed the lease only in his official
capacity as a member of a limited liability company and the trial court erred
in granting judgment against Smith in his personal capacity.[9]  In order to complain that he was not liable
in the capacity in which he was sued, Smith had the duty to raise that
affirmative defense in a verified pleading in accordance with Rule 93 of the
Texas Rules of Civil Procedure.  See Tex.
R. Civ. P. 93; Sixth RMA Partners,
L.P. v. Sibley, 111 S.W.3d 46, 56 (Tex. 2003) (waived by failing to raise
in verified pleading at trial court); W.O.S.
Constr. Co. v. Hanyard, 684 S.W.2d 675, 676 (Tex. 1985) (per curiam); Butler v. Josephs Wine Shop, Inc., 633
S.W.2d 926, 929 (Tex. App.Houston [14th Dist.] 1982, writ refd n.r.e.).  Although Smith complained about the issue in
his answer and motion to dismiss, the record does not contain any verified
pleading complaining about capacity. 
Absent a verified pleading raising the defense, only trial by consent
will prevent waiver of the issue of capacity. 
RE/MAX of Tex., Inc. v. Katar Corp.,
961 S.W.2d 324, 328 (Tex. App.Houston [1st Dist.] 1997), pet. denied, 989 S.W.2d 363 (Tex. 1999); see Au Pharm., Inc. v. Boston, 986 S.W.2d 331, 340 (Tex. App.Texarkana
1999, no pet.).  In the absence of a
reporters record, we must presume there is evidence in the record to support
the trial courts judgment.[10]  See
Arrendell, 213 S.W.3d at 503.  Smiths third point of error is overruled.

(4)        Without
a Reporters Record, We Must Presume There Is Evidence to Support the Damage
Award

 

            In
his fourth point of error, Smith complains there is no evidence to support the
$6,500.00 in damages and the $4,427.63 in attorneys fees awarded by the trial
court in its reformed judgment.  Smith
alleges he owed only seven months of rent$4,550.00.  Smith argues that the reformed judgment
includes damages which exceed the amount of rent due and cites Krull v. Somoza, which holds damage
claims related to maintaining or
obtaining possession of the premises may be joined with the forcible detainer
action, but damages for other causes of action . . . are not recoverable in a forcible entry and detainer action.  879 S.W.2d 320, 322 (Tex. App.Houston [14th
Dist.] 1994, writ denied).  Without a
reporters record, we are unable to determine what evidence was presented to
the trial court concerning damages.[11]  In the absence of a reporters record, we
must presume there is evidence in the record to support the trial courts
judgment.  See Arrendell, 213 S.W.3d
at 503.  

            Smith
also complains, in his fourth point of error, that the award exceeded the
jurisdictional limits of the court. 
Smith argues that the jurisdictional limits of justice courts should
apply to this appeal.  Smith, though, has
failed to provide this Court with any authority that a trial de novo of a
forcible detainer action in county court is limited to the jurisdictional
limits of the justice court.  Because the
primary issue in a forcible detainer suit is possession and that issue provides
the court with jurisdiction, the Texas Supreme Court has held, under Rule 752, that
a party may recover the specified damages regardless of the amount so long as
[the prevailing party] can prove such damages.  Haginas
v. Malbis Meml Found., 163 Tex. 274, 354 S.W.2d 368, 372 (1962).  The
First District Court of Appeals has explained Haginas as follows:  

In other words, in a trial de novo in a forcible-detainer proceeding on appeal in  county court, a prevailing party may recover
the damages allowed by rule 752 even if the amount of those damages exceeds the
amount-in-controversy limit of the county courts original jurisdiction.   

 

Hong Kong Dev., Inc. v. Nguyen, 229 S.W.3d 415, 43435 (Tex. App.Houston
[1st Dist.] 2007, no pet.).  Smiths
fourth point of error is overruled.

(5)        Whether
the Trial De Novo Violated Smiths Constitutional Rights Is Inadequately
Briefed

 

            In
his fifth point of error,[12]
Smith argues the trial court erred in denying his motion for new trial because a
trial de novo violated Defendants federal and state constitutional rights.  Smith fails to provide this Court with any
authority for the argument that the trial de novothe normal procedure for an
appeal of a forcible detainer from a justice court which is not a court of
recordviolated his federal and state constitutional rights.  The law is well settled that [a] party
proceeding pro se must comply with all applicable procedural rules and is held
to the same standards as a licensed attorney. 
Weaver v. E-Z Mart Stores, Inc.,
942 S.W.2d 167, 169 (Tex. App.Texarkana 1997, no pet.).  We review and evaluate pro se pleadings with
liberality and patience, but otherwise apply the same standards applicable to
pleadings drafted by lawyers. Foster v.
Williams, 74 S.W.3d 200, 202 n.1 (Tex. App.Texarkana 2002, pet.
denied).  The Texas Rules of Appellate
Procedure require an appellants brief to contain a clear and concise argument
for the contentions made, with appropriate citations to authorities and to the
record. Tex. R. App. P. 38.1(i).  Smiths complaint that the trial de novo
violated his constitutional rights is overruled as inadequately briefed. 

(6)        The Trial Court Did Not
Err in Denying Smiths Motion for New Trial

            In
his fifth and sixth points of error, Smith argues that the trial court erred in
denying his motion for new trial because there never was an [o]rder setting
trial in this case and because he never received notice of the trial
setting.  Smith alleges that he never
received notice of a trial date in violation of his right to due process.[13]  In his motion for new trial filed after the
trial court reformed the judgment, Smith complains that he failed to receive
notice of the trial setting.  

            The
Texas Supreme Court has held the standards announced in Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 393, 133 S.W.2d
124, 126 (1939), apply to post-answer default judgments.  Dolgencorp
of Tex., Inc. v. Lerma, 288 S.W.3d 922, 925 (Tex. 2009) (per curiam); Lopez v. Lopez, 757 S.W.2d 721, 722
(Tex. 1988) (per curiam).  A default
judgment should be vacated and a new trial granted when the defaulting party
establishes:

(1) the failure to appear was not intentional or
the result of conscious indifference, but was the result of an accident or
mistake, (2) the motion for new trial sets up a meritorious defense, and (3)
granting the motion will occasion no delay or otherwise injure the
plaintiff.  

 

Dolgencorp, 288 S.W.3d at 926; Craddock, 133 S.W.2d at 126.  When a defendant did not receive actual or
constructive notice of trial, due process prevents application of the second
and third prongs of the Craddock
test.  See Lopez, 757 S.W.2d at 722;
In re Parker, 20 S.W.3d 812, 817
(Tex. App.Texarkana 2000, no pet.). 
Due process requires that a party to a lawsuit receive reasonable notice
of a trial setting.  Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 84 (1988); In re Marriage of Parker, 20 S.W.3d
812, 818 (Tex. App.Texarkana 2000, no pet.).  A judgment that is entered without proper
notice to the parties is constitutionally infirm.  Peralta,
485 U.S. at 84.  

            The
record in this case does not affirmatively show Smith failed to receive notice.[14]  We presume a trial court will hear a case
only after the parties have received proper notice.[15]  Blanco
v. Bolanos, 20 S.W.3d 809, 811 (Tex. App.El Paso 2000, no pet.); Jones v. Tex. Dept of Public Safety,
803 S.W.2d 760, 761 (Tex. App.Houston [14th Dist.] 1991, no writ).  To overcome this presumption, an appellant
must affirmatively show a lack of notice. 
Blanco, 20 S.W.3d at 811.  We note that Smith failed to file any
supporting affidavits to either motion for new trial asserting that he failed
to receive notice of the trial setting.  Tex. R. Civ. P. 567.  The record does contain a document titled DEFENDANTS
NOTICE TO COURT filed on December 10, 2009, which alleges Smith was coming
down with the flu and requested that the trial court either reschedule the
hearing or grant Smiths motion to dismiss.[16]  This document indicates Smith was aware a
hearing was scheduled for December 10, 2010. 
Smith states in his first motion for new trial that [o]n October 12,
2009 the Defendant contacted the court administrator and had the hearing rescheduled
for December 10, 2009, due to health issues. 
Although his first motion for new trial had already been overruled as a
matter of law, the trial court held a hearing on March 4, 2010, on the first
motion for new trial.  The trial court
still had plenary power over the case.  Tex. R. Civ. P. 329b(e).  In its order of March 17, 2010, denying the
motion, the trial court states: 

2.         The Court had set this matter for trial on October 12, 2009,
but that setting was put off because of Defendants telephone call that he was
preparing for major surgery.  At
Defendants request, the case was reset until December 10, 2009.  

 

3.         On December 8, 2009, Defendant Smith again called the court
and wanted to reset the trial but was advised he would have to get consent from
the Plaintiff.  The Defendant filed no
motion for continuance nor did he appear on December 10, 2009 for trial.

 

The record does not contain a
reporters record from the March 4, 2010, hearing.  Without a complete record, we must presume
the missing portions of the record would support the trial courts
decision.  See Arrendell, 213 S.W.3d
at 503.  Smiths complaint that he did
not receive notice of the trial setting in violation of his right to due
process is overruled.  

            Assuming
without deciding that Smiths allegation he was ill was sufficient to meet the
first prong of the Craddock test,
Smith has made no effort to establish the second or third prongs of the
test.  Smith has failed to establish his
motion for new trial should have been granted under the Craddock test.  The trial
court did not err in denying Smiths motion for new trial.  

            For the reasons stated, we affirm
the judgment of the trial court.

 

 

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          November 18, 2010

Date Decided:             December 1, 2010











[1]Smith
alleges the space initially proved to be unsuitable when the building failed to
be large enough to accommodate a commercial bus his company owned.  Smith alleges the Business Park provided
space in another building to accommodate the bus without additional
charge.  Smith alleges he later
discovered the address on the lease was incorrect.  According to Smith, this alleged defect
voided the lease and his insurance company threatened to terminate his
insurance policy unless the defect was remedied.  Smith alleges the Business Park refused to
draw up new lawful contracts and eventually locked out the Fractional at
both the Primary and free spaces . . . .

 





[2]The
Business Park listed three alternative addresses for Smith in its sworn
complaint for eviction.  Smith alleges
personal service was only attempted at the leased premises of which he had been
locked out.





[3]The
judgment provides Michael B. Barnard and his attorneys were [p]resent at this
hearing, but [a]lthough called from the door of the courtroom, no one
appeared on behalf of Joshua Smith dba Fractional Transportation, LLC.  The judgment does not specify what date the
hearing was held, but Smith does not complain about the failure to specify the
date of the hearing.  The record contains
a document titled DEPUTY REPORTER STATEMENT in which the court reporter
certifies she worked the following date in the above court and on the above
case.  This document was signed on
December 10, 2009.  The reformed judgment
states trial occurred on December 10, 2009. 

 





[4]The
forcible detainer action was filed on behalf of the Business Park by Michael
Barnard Authorized member.

 





[5]The
record contains an order explicitly overruling Smiths motion for new trial
signed on March 17, 2010.  The record
indicates a hearing was held on Smiths motion for new trial on March 4, 2010.  

 





[6]Except
when specially provided by law, there may be but one final judgment
rendered in any cause.  Tex. R. Civ. P. 301.  The entry of a second judgment in the same
case does not automatically vacate the first judgment; if there is nothing in
the record to show the first judgment was vacated, the second judgment is a
nullity.  See Walnut Equip. Leasing Co. v. Wu, 920 S.W.2d 285, 286 (Tex.
1996); Mullins v. Thomas, 136 Tex.
215, 217, 150 S.W.2d 83, 84 (1941); Gainesville
Oil & Gas Co. v. Farm Credit Bank of Tex., 795 S.W.2d 826, 828 (Tex.
App.Texarkana 1990, no writ).  It is
not necessary that the second judgment expressly state that the first judgment
is vacated, though this would be the preferable procedure.  City of
W. Lake Hills v. State, 466 S.W.2d 722, 726 (Tex. 1971) (finding corrected
judgment vacated first judgment); Azbill
v. Dallas County Child Protective Servs. Unit of Tex. Dept of Human &
Regulatory Servs., 860 S.W.2d 133, 139 (Tex. App.Dallas 1993, no
writ).  In this case, the second judgment
is titled REFORMED JUDGMENT, disposes of all parties and all claims, and
orders a reduced damage award.  The
reformed judgment in this case vacated the first judgment.

 





[7]This
motion was titled DEFENDANTS THIRD MOTION FOR NEW TRIAL.  The record does not contain a second motion
for new trial, but does contain a motion titled SECOND AMENDED MOTION TO
RECUSE OR, IN THE ALTERNATIVE, TO SET A HEARING ON THE MOTION FOR NEW
TRIAL.  The motion merely requests a
hearing to be held on the motion for new trial. 


 





[8]The
notice of appeal was due on June 15, 2010. 
Smith signed the notice of appeal on June 14, 2010.  The record does not indicate whether the
notice of appeal was sent by U.S. mail.  See Tex.
R. App. P. 9.2.  Even if the
mailbox rule does not apply, a motion to extend time to file a notice of appeal
is necessarily implied when an appellant, acting in good faith, files a
perfecting instrument beyond the time allowed for perfecting an appeal, but
within the fifteen-day period in which the appellant would be entitled to move
to extend the filing deadline.  See Verburgt v. Dorner, 959 S.W.2d 615,
617 (Tex. 1997).





[9]Smith
complains that the Defendant had no standing. 
The substance of Smiths complaint is that he is not liable in his
personal capacity because the contract was signed in his official capacity as a
member of the limited liability company. 
The issue of standing focuses on whether a party has a sufficient
relationship with the lawsuit so as to have a justiciable interest in its
outcome, whereas the issue of capacity is conceived of as a procedural issue
dealing with the personal qualifications of a party to litigate.  Austin
Nursing Ctr., Inc. v. Lovato, 171 S.W.3d 845, 848 (Tex. 2005) (quoting 6A Charles Alan Wright, Arthur R. Miller, &
Mary Kay Kane, Wright, Miller & Kane, Federal Practice & Procedure:  Civil 2d § 1559, at 441 (2d ed.
1990)).  The caselaw cited by Smith
concerns capacity or attempts to disregard the corporate entity.  See Byrd
v. Estate of Nelms, 154 S.W.3d 149, 155 (Tex. App.Waco 2004, pet. denied)
(legal capacity to sue under an assumed name); S.I. Prop. Owners Assn v. Pabst Corp., 714 S.W.2d 358, 362 (Tex.
App.Corpus Christi 1986, writ refd n.r.e.) (alter ego doctrine); Bluebonnet Farms, Inc. v. Gibraltar Sav. Assn,
618 S.W.2d 81, 84 (Tex. Civ. App.Houston [1st Dist.] 1980, writ refd n.r.e.)
(capacity to sue); Rimco Enters., Inc. v.
Tex. Elec. Serv. Co., 599 S.W.2d 362, 365 (Tex. Civ. App.Fort Worth 1980,
writ refd n.r.e.) (capacity to sue and be sued).  





[10]In
a letter brief to the trial court, the Business Park alleges Fractional
Transportation, L.L.C., is a defunct Nevada Corporation. 

 





[11]The
lease agreement provides:  

 

[i]f
on account of any breach or default of any party hereto in its obligations to
any party hereto (including but not limited to the Principal Broker), it shall
become necessary for the non-defaulting party to employ an attorney to enforce
or defend an [sic] of its rights or remedies hereunder, the defaulting party
agrees to pay the non-defaulting party its reasonable attorneys fees . . . .  





[12]We
note that Smith complains about not receiving notice of the trial setting in
his sixth point of error.  To the extent
Smiths complaint in his fifth point of error can be interpreted as complaining
about notice, it is overruled for the reasons stated in addressing his sixth
point of error.





[13]The
Texas Rules of Civil Procedure require notice of the trial setting to be sent
by personal service, courier receipted delivery, certified or registered mail, fax,
or by any other manner as the trial court in its discretion may direct.  Tex.
R. Civ. P. 21a.  Smith cites P. Bosco & Sons Contracting Corp. v.
Conley, Lott, Nichols Machinery Co., which held notice by regular mail was
inadequate to qualify under Tex. R. Civ.
P. 21a when there is no evidence such method of notice was actually
directed by the trial judge.  629 S.W.2d
142, 144 (Tex. App.Dallas 1982, writ refd n.r.e.).  Although Smith complained to the trial court
that the notice of the trial setting violated the Texas Rules of Civil
Procedure, Smith does not explain how the notice violated the Rules.  Thus, Smiths complaint was inadequate to
make the trial court aware of his complaint and to preserve any error based on
the Texas Rules of Civil Procedure.  See Tex.
R. App. P. 33.1.  





[14]Two
of the cases cited by Smith concern situations where the record affirmatively
shows no notice was provided.  LBL Oil Co. v. Intl Power Servs., Inc.,
777 S.W.2d 390, 391 (Tex. 1989) (per curiam) (The record here establishes that
Lindley had no actual or constructive notice of the hearing . . . .); Sebastian v. Braeburn Valley Homeowners Assn,
872 S.W.2d 40, 41 (Tex. App.Houston [1st Dist.] 1994, no writ) (notice
postcard returned undelivered and marked forwarding order expired). 

 





[15]Notice
of a trial setting is distinguishable from service of citation.  Strict compliance with the rules for service
of citation must affirmatively appear on the record in order for a default
judgment to withstand direct attack.  Primate Constr., Inc. v. Silver, 884
S.W.2d 151, 152 (Tex. 1994) (per curiam).

 





[16]Smith
does not argue this motion should be construed as a motion for continuance.