NO. 07-03-0078-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



NOVEMBER 4, 2004


______________________________



IN THE MATTER OF THE MARRIAGE OF ARACELIA RODRIQUEZ


AND DAVID GONZALES MARTINEZ AND IN THE INTEREST OF AARON


MICHAEL MARTINEZ AND ALEXANDRA ANNE MARTINEZ, CHILDREN


 _________________________________



FROM THE 154TH DISTRICT COURT OF LAMB COUNTY;



NO. 15,834; HON. FELIX KLEIN, PRESIDING


_______________________________



Opinion


_______________________________


Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

 David Gonzales Martinez, who is incarcerated in prison, appeals from a divorce
decree. Through the decree, the trial court appointed Martinez' common law wife, Aracelia
Rodriquez, sole managing conservator and changed the last names of their two minor
children. Several issues are before us. Yet, we address only the first since it is dispositive
of the appeal. Through it, Martinez argues that the trial court erred in denying his motion
for new trial since he was denied notice of the trial setting as required by due process and
Texas Rule of Civil Procedure 245. We reverse the judgment of the trial court.

 

Issue One -- New Trial Due to Lack of Notice


 As previously mentioned, Martinez asserts that he should have been granted a new
trial because the trial court did not afford him appropriate notice of the hearing. We sustain
the issue.

 The first time a contested case is set for trial, the litigants must be afforded at least
45 days prior notice of the date, unless the parties agree otherwise. Tex. R. Civ. P. 245. 
But, because it is presumed that a trial court hears a case only after appropriate notice has
been given, the obligation lies with the complainant to affirmatively illustrate the lack of
notice or compliance with Rule 245. Campsey v. Campsey, 111 S.W.3d 767, 771-72 (Tex.
App.-Fort Worth 2003, no pet.); Blanco v. Bolanos, 20 S.W.3d 809, 811 (Tex. App.-El
Paso 2000, no pet.). 

 Here, the reporter's record establishes that the trial occurred on October 28, 2002. 
Furthermore, the trial court signed the notice setting the trial for that date on September
19, 2002. Given this, Martinez was afforded only 39 days prior notice of the hearing, as
opposed to the 45 days mandated by Rule 245. Furthermore, no one contends that the
October 28th setting was anything other than the first for this proceeding or that the parties
agreed to that date. Nor does the appellate record depict otherwise.

 Additionally, Martinez had filed an answer and counterclaim to his wife's petition (on
August 27, 2002) and not only sought joint conservatorship of the children but also asked
that the children's names be left unchanged. Thus, it can be said that the proceeding was
contested.

 So too did he aver in an unsworn declaration attached to his motion for new trial that
he 1) was not provided with notice of the hearing before October 28th and 2) first became
aware of the trial date only after receiving a copy of the final judgment from opposing
counsel. Denying receipt of notice rebuts the presumption that due notice was afforded
the litigant. Smith v. Holmes, 53 S.W.3d 815, 818 (Tex. App.-Austin 2001, no pet.). And,
when coupled with the 39-day period between the day the trial court set the cause for trial
and the day trial occurred, we cannot but hold that the trial court abused its discretion in
denying the motion for new trial. Smith v. Levine, 911 S.W.2d 427, 433 (Tex. App.-San
Antonio 1995, writ denied) (holding that the decision to grant or deny a motion for new trial
lies within the discretion of the trial court).

 Accordingly, the divorce decree is reversed, and the cause is remanded for further
proceedings. 

 

 Per Curiam

 



LE="font-size: 10pt"> After the body was found, appellant was brought to the police station for a third
interview. At that time, he told a story that conflicted with his previous ones. The next day,
appellant voluntarily returned to the police station and stated that Mark had approached
him to set up a cocaine deal. On the night Mark disappeared, appellant claimed that two
Hispanic males came to his house in a Cadillac. He told Mark he would not participate in
his drug deal, and Mark got in his car and drove away after motioning for the two Latinos
in the Cadillac to follow him. Appellant was later arrested for the murder.

 

Issue One - Lesser-Included Offense


 In his first issue, appellant argues that the trial court should have granted his request
for an instruction to be included in the jury charge on the lesser-included offense of
aggravated assault. We overrule the issue.

 The State concedes that aggravated assault is a lesser-included offense of murder. 
See Cardenas v. State, 30 S.W.3d 384, 392 (Tex. Crim. App. 2000). Therefore, to be
entitled to the instruction, evidence must appear of record which would permit a jury to
rationally conclude that appellant is guilty only of the lesser crime. Schweinle v. State, 915
S.W.2d 17, 18 (Tex. Crim. App. 1996). It is not enough that the jury may disbelieve crucial
evidence pertaining to the greater offense. Bignall v. State, 887 S.W.2d 21, 24 (Tex. Crim.
App. 1994). There must be evidence directly germane to the lesser offense; that is, there
must be evidence affirmatively showing that appellant only committed the lesser offense. 
Id. And, that evidence may come from any source. Lugo v. State, 667 S.W.2d 144, 147
(Tex. Crim. App. 1984). 

 Here, the evidence indicates that appellant either did nothing to the decedent or 
that he repeatedly struck the decedent about his head and body with or against a blunt
object, placed plastic bags over Mark's head, wrapped him in blankets, tarps, cord, chains
and weights, and finally dumped the body into a watery pit. To the extent that appellant
denied the commission of any act against appellant, that does not entitle him to an
instruction on a lesser-included offense. Garcia v. State, 630 S.W.2d 914, 919 (Tex.
App.-- Amarillo 1982, no pet.) (holding that when a defendant's evidence indicates he is
not guilty of any offense, he is not entitled to an instruction on a lesser offense). 

 As to the other alternative, appellant suggests that the evidence permits one to infer
that he did not intend to kill Mark and, therefore, he was entitled to an instruction on the
lesser offense. Yet, we note that the State indicted appellant for intentionally and
knowingly causing the death of Mark, i.e. for murder under §19.02(b)(1) of the Texas Penal
Code. Furthermore, the very same evidence upon which appellant bases his contention
illustrates, nonetheless, an intent to cause serious bodily injury. (4) And, because those acts
constituted acts clearly dangerous to human life and it is undisputed that one or more of
them caused Mark's death, the evidence also established appellant's guilt for murder under
§19.02(b)(2) of the Penal Code. (5) In other words, the evidence before us illustrates that he
either committed murder under §19.02(b)(1) or (b)(2). Since it does, it is akin to that before
the Court of Criminal Appeals in Forest v. State, 989 S.W.2d 365 (Tex. Crim. App. 1999). 
And, given the absence of any evidence "that appellant was guilty only of anything less
than some form of murder," we like the court in Forest, must also conclude that he "was not
entitled to any instruction on aggravated assault." Id. at 368 (emphasis added). To
reiterate, when the acts undertaken cause death and illustrate endangerment to human life
and an intent to cause serious bodily injury, one cannot claim entitlement to the lesser-included offense of aggravated assault simply because he may not have intended to kill. 
Id. 

 Issue Two - Legal and Factual Sufficiency as Primary Actor

 In his second issue, appellant complains that the evidence is legally and factually
insufficient to show he intentionally and knowingly caused Mark's death as the primary
actor. We overrule the issue. 

 The standards by which we review legal and factual sufficiency challenges are well
settled. We will not reiterate them but instead refer the parties to Jackson v. Virginia, 443
U.S. 307, 309, 99 S. Ct. 2781, 61 L. Ed.2d 560 (1979); Zuliani v. State, No. 1168-01, 2003
Tex. Crim. App. LEXIS 26 (Tex. Crim. App. Feb. 5, 2003); and King v. State, 29 S.W.3d
556, 562-64 (Tex. Crim. App. 2000) for explanation of the same. 

 The evidence in this case was circumstantial. However, the following appeared of
record. Mark was last seen alive at appellant's house. Appellant and Mark were involved
in a drug transaction. Mark's body was found wrapped in material identical to that found
in or around appellant's house. A cigarette butt found in appellant's garage and containing
his DNA was of the same brand found between several plastic bags tied around Mark's
head. Mark's blood was found on a shovel in appellant's garage, and the blood spatter
appearing thereon was of a medium velocity consistent with blunt force trauma. Mark's
body was discovered at a remote location, a location about which appellant's roommate
had knowledge. An inmate in jail with appellant testified that appellant said he had killed
a man at his home with a bat because he owed him money for cocaine. The equipment
used to weigh the body down was available at the place where appellant and Mark worked. 
And, appellant told conflicting stories about what happened the night of Mark's
disappearance. Viewing this evidence in a light most favorable to the verdict, we conclude
that a trier of fact could have rationally found, beyond all reasonable doubt, that appellant
knowingly and intentionally caused the death of the victim. Furthermore, that the evidence
and testimony of record establishing guilt was circumstantial or contained inconsistencies
or was subject to discredit did and does not render the evidence supporting the verdict so
weak as to make the verdict clearly wrong or manifestly unjust. Nor does it render the
verdict against the great weight and preponderance of the evidence so as to be clearly
wrong. It simply created opportunity for the jury to exercise its role as factfinder. Thus, the
evidence was neither legally nor factually insufficient to support the verdict.

 Issue Three - Legal and Factual Sufficiency as a Party

 Appellant contends in his third issue that the evidence is legally and factually
insufficient to show that he is guilty of murder as a party. We overrule the issue. 

 As previously discussed, the jury found appellant guilty as the primary actor in the
murder of Mark. Furthermore, we concluded that the evidence supporting the verdict was
both legally and factually sufficient. Therefore, the judgment can be upheld on that basis
alone, even if the evidence failed to establish that appellant committed the offense as a
party. So, we need not consider issue three. See Barnes v. State, 62 S.W.3d 288, 296-299 (Tex. App.--Austin 2001, pet. ref'd) (holding that when different theories, i.e.
commission of a crime as the primary actor or as a party, are submitted to the jury, a
general verdict is sufficient if the evidence supports one of the theories submitted).

 Issue Four - Charge on the Law of Parties

 In his final issue, appellant argues that the trial court erred in overruling his objection
to submitting a party charge to the jury. The court purportedly erred because there was
no evidence warranting the submission. We overrule the issue. 

 A person is criminally responsible as a party to an offense if the offense is
committed by his own conduct or by the conduct of another for which he is criminally
responsible or both. Tex. Pen. Code Ann. §7.01(a) (Vernon 1994). Here, the jury was
instructed that if they found that a "person or persons unknown" intentionally and knowingly
caused the death of Mark by striking him with or against a hard object, and that appellant
acting with intent to promote or assist the commission of the offense, solicited,
encouraged, directed, aided, or attempted to aid an unknown person or persons to commit
the offense, then appellant would be guilty of murder. Yet, we have perused the record for
evidence illustrating that appellant was simply a party to a murder committed by another
and found none. 

 As described throughout this opinion, the evidence either showed that appellant did
nothing or that he committed the murder on his own or at the behest of others (i.e the two
Latinos in the Cadillac). Nothing illustrates that someone else committed the murder and
appellant merely directed, solicited, encouraged, aided, or attempted to aid the murderer. 
In short, there was no evidence that anyone, other than appellant, killed Mark. So, a party
charge was unwarranted, and the court erred in submitting one. 

 Nevertheless, our job is not over for now we must assess whether the instruction
harmed appellant. In making that determination we find guidance in Brown v. State, 716
S.W.2d 939 (Tex. Crim. App. 1986) and Reyes v. State, 910 S.W.2d 585 (Tex.
App.--Amarillo 1995, pet. ref'd). Both hold that any error in charging the jury on the law
of parties is harmless "if the evidence clearly supports appellant's guilt as a primary actor." 
Brown v. State, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986); Reyes v. State, 910 S.W.2d
585, 593 (Tex. App.--Amarillo 1995, pet. ref'd). (6) Having previously determined that the
evidence was legally and factually sufficient to sustain appellant's conviction as the primary
actor, we find that appellant suffered no harm when the trial court mistakenly included the
party instruction in its jury charge. 

 Accordingly, the judgment of the trial court is affirmed.


 Brian Quinn

 Justice 


Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. gov't code
ann. §75.002(a)(1) (Vernon 1998). 
2. Kay testified that Mark had not been drinking before he left the house on the evening he
disappeared. Ricky Jones, who saw Mark after he left home that night, testified that Mark was not intoxicated
and, in fact, seldom drank at all. 
3. It was determined that Mark did not own a flip-style cell phone, and the last call on the cell phone he
did have was placed earlier in the day. 
4. Indeed, one would be hard-pressed to argue that repeatedly striking the decedent's body and head
with or against a blunt object in a manner which could cause death, then placing the decedent's head in plastic
bags, wrapping the body in tarps, cord, chain and weights, and dumping the body in a pit is something other
than conduct undertaken with an intent to cause serious bodily injury.
5. One commits murder under §19.02(b)(2) of the Texas Penal Code if the accused "intends to cause
serious bodily injury and commits an act clearly dangerous to human life that causes the death of an
individual." Tex. Pen. Code Ann. §19.02(b)(2) (Vernon 1994). 
6. Appellant suggests that to "clearly" support conviction as the primary actor, the evidence must be
of some caliber greater than that needed to establish guilt beyond reasonable doubt. However, he cites no
authority supporting that proposition. Nor does he explain to what standard the court referred when it used
the term "clearly." Additionally, in applying the test, neither the Brown or Reyes courts held that the error was
harmless because the evidence "clearly" supported conviction as the primary actor; rather, both merely
concluded that the evidence was sufficient to support conviction. And, we found the evidence both legally and
factually sufficient to uphold the verdict at bar. Finally, of the three standards often used to describe the
evidentiary burdens of proof, i.e. preponderance of the evidence, clear and convincing evidence, and beyond
all reasonable doubt, the latter is the most onerous of all. See Leal v. Texas Dept. of Protective & Reg. Serv.,
25 S.W.3d 315, 319 (Tex. App.--Austin 2000, no pet.) (discussing the three evidentiary standards). Thus, if
the evidence is of a quality which would permit the jury to find guilt, beyond all reasonable doubt, then it is safe
to say that it "clearly" supports the conviction.