

NUMBER 13-13-00118-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

BORDER STATES ELECTRIC
SUPPLY OF TEXAS, INC.,                                      Appellants,

v.

COAST TO COAST ELECTRIC, LLC,
ENRIQUEZ ENTERPRISES, INC.,
GILBERT ENRIQUEZ, JAIME ENRIQUEZ
AND CARLOS MENDIOLA,                                       Appellees.

## On appeal from the County Court at Law No. 8
of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Benavides

This is a collection case.   By seven issues, which we re-organize as five, Border

States Electric Supply argues that the trial court erred: (1) in rendering a take-nothing judgment against it because the evidence at trial established that appellees, Enriquez Enterprises, Inc. and Gilbert Enriquez, were liable under the Texas Construction Trust Fund Act or an implied contract theory of recovery; (2) in issuing factual findings which were against the overwhelming weight and preponderance of the evidence; (3) in failing to admit certain business records; (4) in failing to award attorney's fees; and (5) in failing to grant a motion for continuance.

By one cross-issue, cross-appellant/appellee Coast to Coast Electric, LLC asserts that the trial court erred because appellant's claims were barred by principles of preclusion.

We affirm, in part, and reverse and remand, in part.

## I. BACKGROUND

Border States Electric Supply ("Border States") is a supplier of electrical equipment for construction projects. Coast to Coast Electric, LLC ("Coast") is an electrical contractor owned by Carlos Mendiola, Gilbert Enriquez, and Jaime Enriquez. Enriquez Enterprises, Inc. ("EEI") is a general contractor owned by Guadalupe Enriquez, Gilbert and Jaime Enriquez's father. EEI's chief financial officer is Gilbert Enriquez.

In February 2007, Coast opened a credit account with Border States to obtain electrical equipment for several construction jobs: (1) a Donna Independent School District project; (2) the Edinburg Consolidated Independent School District Ebony project; (3) a Hidalgo Independent School District project; (4) a Sharyland Independent School District project; and (5) the Bob Gastell warehouse project. Although Coast only had

2

one line of credit with Border States, it assigned different account numbers to each project to ensure that funds were not commingled. Mendiola signed as a personal guarantor for Coast's line of credit.

The evidence shows that Coast paid for most of the equipment purchased from Border States. Border States claims, however, that several "over the counter" purchases were not paid. These "over the counter" purchases were picked up and signed for by persons allegedly working for Coast. On April 23, 2008, Border States sued Coast for the items allegedly not paid for in the Donna ISD project (the "First Suit"). Later, on June 19, 2008, Border States filed a second lawsuit against Coast for the items not paid for in the remaining projects (the "Second Suit"). The parties settled the First Suit. The First Suit's settlement agreement provided that:

> This release specifically does not release any claims that [Border States] has in Cause No. CL-08, 136-D, styled *Border States Electric Supply of Texas, Inc. v. Coast to Coast, LLC and Carlos Mendiola* . . . and does not preclude the Court in said suit from sustaining any legally sufficient claims of [Border States] or legally sufficient defenses asserted by Coast whether substantive or procedural.

After the First Suit settled, the parties subsequently went to trial on the Second Suit. After a bench trial in the Second Suit, the trial court ordered that Coast and Mendiola, jointly and severally, owed Border States $30,228.94 at the rate of 5% per annum until paid. The trial court ordered, however, that Border States could take nothing against EEI, Gilbert Enriquez, or Jaime Enriquez. Finally, the trial court ordered that each party was responsible for its own attorney's fees. Border States requested that the trial court issue findings of fact and conclusions of law, and the trial court did so. This appeal then ensued.

3

## II. PRINCIPLES OF PRECLUSION

We will first address cross-appellant/appellee Coast's cross-issue because it could be dispositive of this entire appeal. *See* TEX. R. APP. P. 47.1. Coast contends that Border States's unpaid invoices on the Edinburg, Hidalgo, and Sharyland school projects, as well as the Gastell warehouse project, should have been raised in the First Suit because they were all due and payable on April 23, 2008, the day the First Suit was filed. Accordingly, Coast argues that the underlying lawsuit that is the basis for this appeal is barred by the principles of preclusion, or res judicata.

"Claims preclusion prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992) (citing *Gracia v. RC Cola-7-Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex. 1984)). "Claim preclusion prevents splitting a cause of action." *Id.* "The policies behind the doctrine reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Id.* The Texas Supreme Court has adopted a "transactional approach" to claims preclusion and has outlined three factors to determine whether claims arise from the same transaction: (1) if the claims relate in time, space, origin, or motivation; (2) whether they form a convenient trial unit; and (3) whether their treatment as a trial unit conforms to the parties' expectations or business practices. *Id.*

4

We recognize that Coast only applied for one line of credit with Border States and that Coast, on its own, assigned individual numbers to each job location for the sake of recordkeeping. The fact that these debts arise from one line of credit supports the first "transactional approach" factor that these claims were related in origin and motivation. *See id.* We also acknowledge that resolution of these claims in one lawsuit would form a convenient trial unit, as posited by the second "transactional approach" factor. *See id.*

However, there is evidence that weighs against a finding that these claims were part of one "transaction." For example, Coast's numerous unpaid-for "over the counter" purchases involved different types of electrical equipment for different construction projects throughout South Texas at different times. *See id.* This evidence weighs against a finding of the first "transactional approach" factor that the purchases were similar in time or space. Most persuasive, however, is the fact that there is no evidence of the third "transactional approach" factor: the parties did not expect these claims to be litigated as a single trial unit. The First Suit's settlement agreement provided that the release "specifically [did] not release any claims that [Border States] [had] in Cause No. CL-08, 136-D." Coast openly and voluntarily signed a settlement agreement in the First Suit whereby it recognized that Border States's outstanding claims in the Second Suit were preserved in a different cause number, as well as their own legal defenses.

After considering the evidence, we disagree with Coast that Border States's claims for the Edinburg, Hidalgo, and Sharyland schools and the Gastell warehouse project were part of the same "transaction" as the Donna ISD claims and therefore precluded by the First Suit. We overrule Coast's cross-issue.

5

### III. RECOVERY OF DAMAGES

We now turn to Border States's first issue. Border States contends the trial court erred in not finding EEI and Gilbert Enriquez liable to Border States under the Texas Construction Trust Fund Act or an implied contract theory of recovery. We construe this issue as a challenge to the sufficiency of the evidence to support the verdict.

**A.      Applicable Law**

When a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *see Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex. 1989); W. Wendell Hall, *Standards of Review in Texas,* 29 ST. MARY'S L.J. 351, 481–82 (1998). In reviewing a "matter of law" challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Dow Chemical*, 46 S.W.3d at 241; *Sterner,* 767 S.W.2d at 690. If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chemical*, 46 S.W.3d at 241; *Sterner,* 767 S.W.2d at 690; Hall, *supra,* at 482. The point of error should be sustained only if the contrary proposition is conclusively established. *Dow Chemical*, 46 S.W.3d at 241 (citing *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983)).

When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the adverse finding

6

is against the great weight and preponderance of the evidence. *Dow Chemical*, 46 S.W.3d at 242; *Croucher,* 660 S.W.2d at 58. The appellate court must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986). In doing so, the court of appeals must "detail the evidence relevant to the issue" and "state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." *Pool,* 715 S.W.2d at 635.

The fact finder is the sole judge of the credibility of the witnesses and the weight to give their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). The fact finder may choose to believe one witness and disbelieve another. *Id.* Reviewing courts cannot impose their own opinions to the contrary. *Id.* "Courts reviewing all the evidence in a light favorable to the verdict thus assume that jurors credited testimony favorable to the verdict and disbelieved testimony contrary to it." *Id.* "For example, viewing the evidence in the light favorable to the verdict means that if . . . the parties to an oral contract testify to conflicting terms, a reviewing court must presume the terms were those asserted by the winner." *Id.*

**B.    The Texas Construction Fund Act**

The Texas Construction Fund Act is found in chapter 162 of the Texas Property Code. *See* TEX. PROP. CODE ANN. §§ 162.001–.033 (West, Westlaw through 2013 3d C.S.). This act "imposes fiduciary responsibilities on contractors to ensure that Texas subcontractors, mechanics, and materialmen are paid for work completed." *In re*

7

*Waterpoint Int'l LLC,* 330 F.3d 339, 345 (5th Cir. 2003). This statute provides that construction payments are trust funds if the payments are made to a contractor or to an officer of the contractor for the improvement of specific real property. *Id.* § 162.001(a); *see also Kelly v. Gen'l Interior Const. Inc.*, 262 S.W.3d 79, 85 (Tex. App.—Houston [14th Dist.]), *overruled on other grounds*, 301 S.W.3d 653 (Tex. 2010). The contractor or officer who receives the trust funds is considered a trustee of the funds. TEX. PROP. CODE ANN. § 162.002. The artisan, laborer, mechanic, contractor, subcontractor, or materialman who furnished labor or material for the construction or repair on the real property is considered the beneficiary of any trust funds. *Id.* § 162.003. A trustee who intentionally, knowingly, or with the intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts the funds without first fully paying current or past due obligations has misapplied the trust funds. *See id.* § 162.031(a). "Thus, a party who misapplies these trust funds is subject to civil liability if (1) the party breaches the duty imposed by chapter 162, (2) with the requisite scienter, and (3) the claimants are within the class of people chapter 162 was designed to protect and have asserted the type of injury chapter 162 was intended to prohibit." *C & G, Inc. v. Jones*, 165 S.W.3d 450, 453 (Tex. App.—Dallas 2005, pet. denied). Any officer or director who has control or direction over the funds is also a trustee of the funds and is personally liable. *Id.* at 453–54.

Border States argues that EEI was a "contractor" and Gilbert Enriquez was an "officer" under chapter 162 and that they as "trustees" intentionally defrauded Border States as a beneficiary of its rightful trust funds when they failed to fully pay it for

8

equipment.   At trial, Gilbert Enriquez, Chief Financial Officer of EEI and a one-third owner of Coast, testified that Coast had a post office box where all of its bills were received.   He stated that only Mendiola had a key to this post office box.   He explained that Mendiola "gathered all the invoices together," had a secretary put them into a binder for reviewing purposes, and then both men would decide which bills to pay on behalf of Coast.   In other words, Gilbert only saw the invoices that were provided to him by Mendiola.

Gilbert performed the same bill-paying functions for EEI.   He agreed that in one part of his week he paid the bills for EEI, the general contractor on these projects, and then later in the week, he helped Mendiola decide which bills to pay for Coast, the subcontractor.   Despite the fact that Gilbert worked for both the contractor and subcontractor on these projects, there is no specific evidence in the record about the compensation EEI received for any of the four projects at issue.   *See* TEX. PROP. CODE ANN. § 162.001(a) (discussing that construction payments are "trust funds" if the payments are made to a contractor).   The only invoices in evidence were invoices from Border States to Coast.   In other words, there was no evidence about the amount of money the school districts or Bob Gastell owed or paid directly to EEI.   Further, there was no evidence that either EEI or Gilbert Enriquez acted knowingly or intentionally to defraud Border States out of payment, especially given the fact that Gilbert said he could only pay the bills Mendiola provided to him.   *Id.* § 162.031(a) (setting forth the mens rea requirement for this statute to apply).

Border States urges us to follow *Choy v. Graziano Roofing of Texas* to find both EEI and Gilbert Enriquez liable under the Texas Construction Fund Act. 322 S.W.3d 276 (Tex. App.—Houston [1st Dist.] 2009, no pet.). In *Choy*, the trial court found Andrew Choy, the president of Windwater Homes, L.L.C., a home construction company, personally liable for failing to pay a roofing company, Graziano Roofing of Texas, for roofing materials and labor on thirty-nine residential properties. *Id.* at 280. The evidence established that Windwater obtained construction loans from Citibank of Texas and Frost National Bank to finance the construction of these properties. *Id.* At trial, Choy testified that he was President of Windwater, he signed all final checks for the company, and "knew that Graziano and other contractors did not get paid for work they had completed." *Id.* at 281. Choy testified that it was "possible" that some of the construction loan proceeds meant for Graziano Roofing were diverted overseas to Windwater's owner. *Id.* The trial court concluded that Choy was a "trustee" under the Act who misapplied Windwater Homes's "trust funds" from a construction loan and entered a final judgment against him personally for $131,796.09. *Id.*

The *Choy* case is easily distinguished from the underlying case in one key way: Choy had documents in evidence that showed the amount of funds the banks released to Windwater for roofing supplies. *Id.* at 280. The record showed that when Citibank, for example, received a request, a Citibank inspector would visit the property at issue and document "that whatever item was being billed at that time was complete." *Id.* No such evidence existed here. The only business records that were in evidence were invoices from Border States to Coast; there was no evidence regarding the amount of funds the

10

school districts or Bob Gastell paid to EEI for electrical equipment. *See* TEX. PROP. CODE ANN. § 162.001(a). Furthermore, there was no evidence that Gilbert Enriquez intentionally, knowingly, or with the intent to defraud, kept funds from Border States, whereas Choy testified that it was "possible" that some of the construction loan proceeds meant for Graziano Roofing were diverted overseas. *See Choy*, 322 S.W.3d at 281.

In light of the foregoing, we conclude that the evidence supports the trial court's holding that there was no violation of the Texas Construction Trust Act. *See Dow Chemical*, 46 S.W.3d at 241. Border States did not meet its burden in establishing that either EEI or Gilbert Enriquez had "trust funds" or that the requisite scienter existed to meet the elements of this claim. *See* TEX. PROP. CODE ANN. §§ 162.001(a), 162.031(a). Further, we hold that this finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool*, 715 S.W.2d at 635.

## C.    Implied Contract Theory of Recovery

Border States also contends that the trial court should have found that EEI and Gilbert Enriquez were liable under an implied contract theory of recovery. "It is said that the distinction between an express contract and one implied in fact is that the former arises when the contractual terms are stated by the parties; and that the latter arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract." *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972).

While the evidence is clear that a contractual relationship existed between Border States and Coast, it is not as clear that a contract existed between Border States and

11

EEI, and less so between Border States and Gilbert Enriquez individually. Border States points to no evidence, and we find none, demonstrating "facts or circumstances that demonstrate a mutual intention to contract" with either EEI or Gilbert Enriquez. *See id.* Border States's line of credit and dealings were primarily with Coast and Mendiola, and Border States ultimately received a judgment against these two defendants.

The evidence supports the trial court's finding that Border States did not have an implied contract with either EEI or with Gilbert Enriquez. *See Dow Chemical*, 46 S.W.3d at 241. Further, we hold that this conclusion is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool*, 715 S.W.2d at 635.

We overrule Border States's first issue.

## IV. FINDINGS OF FACT AND CONCLUSIONS OF LAW

By its second issue, Border States argues that the trial court's factual findings were against the overwhelming weight and preponderance of the evidence.

## A. Applicable Law

"A trial court's findings of fact are reviewed for factual sufficiency of the evidence under the same legal standards as applied to review jury verdicts for factual sufficiency of the evidence." *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (citing *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex. 1991)). "In reviewing a factual sufficiency point, the court of appeals must weigh *all* of the evidence in the record." *Id.*; *see Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex. 1980). Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). In reviewing

12

the record and evidence, the appellate court must "clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust." *Ortiz*, 917 S.W.2d at 772.

## B.     The Texas Construction Fund Act

The trial court made the following findings of fact regarding Border States's assertion that EEI and Gilbert Enriquez violated the Texas Construction Fund Act:

4.     Plaintiff proved that materials in the amount of $30,228.94 were delivered to representatives of Coast by Border.

5.     Plaintiff failed to prove by a preponderance of the evidence that the materials sold by Border and delivered to Coast, were ever received by Enriquez Defendants[1] or were incorporated into Enriquez Defendants['] projects.

6.     Plaintiff failed to prove by a preponderance of the evidence that the materials Border sued on were delivered to Enriquez Defendants.

7.     Plaintiff failed to prove by a preponderance of the evidence that, assuming the existence of trust funds, any defendant misapplied trust funds.

8.     Plaintiff failed to prove by a preponderance of the evidence that any defendant acted "intentionally or knowingly, or with intent to defraud."

9.     Plaintiff failed to prove by a preponderance of the evidence that, assuming the existence of trust funds, any defendant directly or indirectly retained, used, disbursed, or otherwise diverted trust funds.

Weighing all of the evidence in the record (as detailed earlier in section III.B of this opinion), we cannot say that the trial court's findings of fact regarding EEI and Gilbert

---

[1] The trial court defined the "Enriquez Defendants" as EEI, Jaime Enriquez, and Gilbert Enriquez.

13

Enriquez's liability "are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust."   *Cain,* 709 S.W.2d at 176.

## B.    The Implied Contract Theory

Border States also challenged the trial court's findings of fact regarding Border States's contract claims.   The relevant findings of fact follow:

1. Plaintiff proved by a preponderance of the evidence that a written contract was executed between Border and Coast.

2. Plaintiff proved by a preponderance of the evidence that Mendiola executed the contract between Border and Coast on behalf of Coast and as a personal guarantor.

3. Plaintiff failed to prove by a preponderance of the evidence that a contract, in any form, existed between Border and any of the Enriquez Defendants.

4. Plaintiff failed to prove by a preponderance of the evidence that Border expected payment from Enriquez Defendants.

5. Plaintiff failed to prove by a preponderance of the evidence that an "offer" was made by Border to any of the Enrique Defendants.

6. Plaintiff failed to prove by a preponderance of the evidence that there was an "acceptance" of any offer by the Enriquez Defendants.

7. Plaintiff failed to prove by a preponderance of the evidence that there was a "meeting of the minds" between Border and any of the Enriquez Defendants.

8. Plaintiff failed to prove by a preponderance of the evidence that the Enriquez Defendants consented to the terms of any agreement with Border.

9. Plaintiff failed to prove by a preponderance of the evidence that there was an "execution and delivery of any contract between Border and any of the Enriquez Defendants with the intent that it be mutual and binding."

10. Plaintiff proved that materials in the amount of $30,228.94 were delivered by Border to Coast, for which payment was not made.

14

Again, considering all of the evidence in the record (as detailed earlier in section III.C of this opinion), we cannot say that the trial court's findings of fact regarding EEI and Gilbert Enriquez's liability in an implied contract theory of recovery "are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Cain,* 709 S.W.2d at 176. We overrule Border States's second issue.

## V. THE EXCLUSION OF EVIDENCE

By its third issue, Border States argues that the trial court abused its discretion when it failed to admit certain business records. Specifically, Border States complains that the trial court erred when it failed to admit the invoices "because these documents were adequately proven through the uncontested testimony of [Border States's] custodians of the business records who provided uncontradicted testimony regarding the trustworthiness of said invoices and statements pursuant to Texas Rule of Evidence 803(6)."

The admission of evidence is a matter within the trial court's discretion. *See Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2005); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). "To reverse a judgment based on a claimed error in admitting or excluding evidence, a party must show that the error probably resulted in an improper judgment." *See Interstate Northborough*, 897 S.W.2d at 220 (quoting TEX. R. APP. P. 61.1); *see also* TEX. R. APP. P. 44.1(a). We review the entire record to determine whether the excluded evidence led to an improper judgment. *Id.* Reversible error usually does not occur unless the appellant can

15

demonstrate that the judgment turns on the particular evidence excluded or admitted. *Id.* (citing *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000)).

At trial, the trial court heard inconsistent evidence regarding the excluded business invoices. Most of these invoices had the signature of Coast employee Joe Garcia, and Garcia gave conflicting testimony regarding these records. First, Garcia testified that the signatures on some of the invoices were not his. Later, when Garcia learned that the signatures were written on an electronic signature pad, he stated that "there was a high probability" that some of the signatures could be his. There were also a few invoices that indicated that merchandise was "picked up by Joe Garcia" but then had the signature of other Coast employees.

The court, as the finder of fact, determined the credibility of the witnesses and the weight to be given their testimony. *See City of Keller*, 168 S.W.3d at 820. It was within the province of the finder of fact to resolve conflicts in the evidence, *id.*, and here, with Garcia's wavering testimony and invoices showing conflicting information, the trial court deemed the invoices untrustworthy. In light of the foregoing, we cannot say that the trial court abused its discretion in excluding these invoices. *See Interstate Northborough*, 66 S.W.3d at 220. Further, because Border States has not shown that the exclusion of these invoices led to an improper judgment, we overrule this issue. *See* TEX. R. APP. P. 44.1(a); *Interstate Northborough*, 897 S.W.2d at 220.

## VI. THE FAILURE TO AWARD ATTORNEY'S FEES

In its final judgment, the court ordered that "each party shall be responsible for its own attorney's fees." By its fourth issue, Border States complains that the trial court

should have awarded it attorney's fees. "In Texas, attorney's fees may not be recovered from an opposing party unless such recovery is provided for by statute or by contract between the parties." *Travelers Indem. Co. of Conn. v. Mayfield*, 923 S.W.2d 590, 593 (Tex. 1996). Here, Border States alleges that its attorney's fees are recoverable under Texas Civil Practice and Remedies Code section 38.001, which sets forth that reasonable attorney's fees may be awarded if the claim is for an oral or written contract. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West, Westlaw through 2013 3d C.S.).

Border States filed several causes of action against Coast and Mendiola, including (1) conversion, (2) quasi-contract, (3) unjust enrichment, (4) quantum meruit, (5) collateral estoppel, (6) violations of the Texas Construction Fund Act, (7) alter ego, and (8) breach of contract claims. Of these, Border States could only recover attorney's fees from its contract action, because its other claims were unsuccessful. At trial, Border States's attorney William Kimball testified that he had practiced law in Texas for twenty-eight years, specifically in complex commercial litigation cases; that his hourly rate was $225 per hour; and that this fee was a reasonable and customary fee for attorneys with his experience practicing law in south Texas. A copy of his billing statements for this case was entered into evidence. The billing statement revealed that Kimball billed $28,060.37 in fees representing Border States in the underlying case.

In its findings of fact and conclusions of law, the trial court pointed out that Border States failed to segregate its attorney's fees for each of the claims asserted. It noted that "Plaintiff's evidence of attorney's fees included attorney's fees incurred for the entire case" and that "Plaintiff failed to provide any evidence of the amount of fees incurred on

17

only the contract claim against Coast." It held that a "trial court may refuse to award attorney's fees in the absence of segregation."

In *Stewart Title Guaranty Company v. Sterling*, the Texas Supreme Court held that "a plaintiff is required to show that attorney's fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees." 822 S.W.2d 10, 11 (Tex. 1991) (emphasis added). However, the high court then recognized the following exception:

> A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts.

*Id.* at 11. Border States, in its briefing, argues that this exception is applicable to its case. It contended that its attorney's fees were generated in connection "with claims arising out of the same transactions" and were so interrelated that their prosecution entailed proof of essentially the same facts. However, although claims may be "dependent upon the same set of facts or circumstances . . . that does not mean they all required the same research, discovery, proof, or legal expertise." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2007).

As previously set forth, we review findings of fact by weighing all of the evidence in the record. *Ortiz*, 917 S.W.2d at 772. We may only overturn a finding if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Cain,* 709 S.W.2d at 176. In reviewing the record and evidence, the appellate court must clearly state why the factfinder's "finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust." *Ortiz*, 917 S.W.2d at

18

772. Here, we acknowledge that the trial court found that Border States was successful in its breach of contract claim against Coast and Mendiola. In light of this finding, and guided by the *Tony Gullo Motors* case, we conclude that Border States's "failure to segregate [its] attorney's fees does not mean [it] cannot recover any. Unsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be." *Tony Gullo Motors*, *Inc.*, 212 S.W.3d at 314. Accordingly, we sustain this issue and remand it back to the trial court. Under *Tony Gullo Motors*, it is not necessary for Border States to create separate time records for the breach of contract claim. *Id.* Border States must, however, provide evidence testifying what percentage of time was dedicated solely to the successful breach of contract claim against Coast and Mendiola to be able to recoup these fees. *Id.*

## VII. THE MOTION FOR CONTINUANCE

In its fifth and final issue, with three sub-issues, Border States also argues that the trial court erred in failing to grant a motion for continuance. First, it contends the trial court did not give it the proper 45-day trial notice as required by Texas Rule of Civil Procedure 245. *See* TEX. R. CIV. P. 245. Second, Border States asserts that the trial court erred in failing to enter a level 3 scheduling order. *See id.* R. 190.4. Third, Border States avers that the trial court's failure to grant a continuance violated its due process rights. We address each sub-issue in turn.

### A. Proper Notice

Texas Rule of Civil Procedure 245 provides that a court "may set contested cases . . . on the court's own motion, with reasonable notice of not less than forty-five

days to the parties of a first setting for trial, or by agreement of the parties." TEX. R. CIV. P. 245. At a pre-trial hearing on August 27, 2012, the trial court noted that this was a 2008 case and suggested setting the case for trial on September 17, 2012. When the trial court announced this, counsel for Border States replied, "Judge, all I need is just a little additional time just to get witness subpoenas out." Later that day, Border States submitted a proposed order to the trial court setting trial for September 17, 2012. However, Coast filed an objection to the trial setting, asking for forty-five days' notice as required by Rule 245. Border States responded and "reluctantly agree[d] that a continuance [was] needed."

The case was then re-set to October 1, 2012 in a telephonic hearing with all parties present. Border States filed a subsequent motion for continuance on September 25, 2012 requesting a December 2012 trial date. In its motion, Border States insisted that it needed to take four more depositions—of defendants Gilbert Enriquez, Jaime Enriquez, EEI, and fact witness Bob Gastell—and wanted to conduct more written discovery. This motion presented a different characterization of Border States's trial readiness, as only a month earlier it stated it only needed to issue witness subpoenas. It cited Rule 245 as the basis of its motion. It also stated that the failure of the court to order a Level 3 discovery plan denied it "full and fair discovery" and violated its due process rights.

At a hearing on its motion on October 1, 2012, when the trial court requested that the parties be ready for trial the following Wednesday, Border States replied "Okay" and, later, "Your honor, any time the Court is ready, we're ready to go." The trial court denied

Border States's motion for continuance after this representation, and the trial began that day, October 1.

We review the grant or denial of a motion for continuance on an abuse of discretion standard. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986). We will not overrule the trial court's decision unless the trial court acted unreasonably or arbitrarily "without reference to any guiding rules and principles." *Id.* (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). "A motion for continuance seeking time for additional discovery must be supported by an affidavit that describes the evidence sought, explains its materiality, and shows that the party requesting the continuance has used due diligence to timely obtain the evidence." *Landers v. State Farm Lloyds*, 257 S.W.3d 740, 747 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing TEX. R. CIV. P. 251, 252).

In light of the record, we cannot say the trial court abused its discretion in denying Border States's motion for continuance. As the trial court correctly pointed out, this case was pending on the trial court's docket for nearly four years, and the parties had adequate time to conduct discovery. Further, the record shows that Border States essentially withdrew its motion for continuance when it told the court "any time the Court is ready, we're ready to go" before the trial court ruled on its motion. "Error resulting from a trial court's failure to provide parties proper notice under Rule 245 is waived if a party proceeds to trial and fails to object to the lack of notice." *Custom-Crete, Inc. v. K-Bar Servs. Inc.*, 82 S.W.3d 655, 658 (Tex. App.—San Antonio 2002, no pet.). "A party may waive a complaint by failing to take action when the party receives some, but less than forty-five

21

days', notice." *Id.* at 659; *see also Balogh v. Ramos*, 978 S.W.2d 696, 699 (Tex. App.—Corpus Christi 1998, pet. denied).

We hold that the trial court did not abuse its discretion in failing to grant Border States's motion for continuance. Border States waived its objection when it represented that it was ready to proceed with trial before the trial court ruled on its motion.

## B. Level 3 Scheduling Order

Border States also complains that the trial court failed to issue a Level 3 scheduling order. Rule 190.4 provides that the court must, on a party's motion, order that discovery be conducted in accordance with a discovery control plan tailored to the circumstances of the specific suit. TEX. R. CIV. P. 190.4. "While the rule states that the court 'must' enter a level 3 scheduling order on a party's motion, it does not require that the order provide deadlines different from those under a level 2 case; even under a level 3 scheduling order, the level 2 deadlines continue to apply 'unless specifically changed in the discovery control plan ordered by the court.'" *Allen v. United of Omaha Life Ins. Co.*, 236 S.W.3d 315, 327 (Tex. App.—Fort Worth 2007, no pet.) (quoting TEX. R. CIV. P. 190.4(b)). The trial court ultimately has discretion in these matters; as the rule provides, "the discovery control plan ordered by the court . . . may change any limitation on the time for. . . discovery set forth in these rules." TEX. R. CIV. P. 190.4(b).

This case was pending for four years. In that time, Border States had ample opportunity to conduct discovery. Reviewing the record, we cannot say that the trial court abused its discretion in failing to issue a Level 3 scheduling order.

## C. Violation of Due Process Rights

22

Finally, we disagree with Border States that it was denied its due process rights because the trial court failed to grant a motion for continuance. "A trial court's failure to comply with Rule 245 in a contested case deprives a party of its constitutional right to be present at the hearing, voice its objections in an appropriate manner, and results in violation of fundamental due process." *Custom-Crete, Inc.*, 82 S.W.3d at 659 (citing *Blanco v. Bolanos*, 20 S.W.3d 809, 811 (Tex. App.—El Paso 2000, no pet.). "Failure to give the required notice constitutes lack of due process and is grounds for reversal." *Id.*

Here, however, Border States had ample opportunity to conduct discovery. It also waived its objections when it represented to the court that it was "ready to go" to trial before the trial court ruled on its motion for continuance. In light of the record, and the standard of review that compels us to defer to the trial court's decisions absent unreasonable or arbitrary actions, we overrule Border States's fifth issue.

## VIII. CONCLUSION

We reverse the trial court's judgment with regard to Border States's claim for attorney's fees on the breach of contract claim against Coast and Mendiola and remand to the trial court to give Border States the opportunity to segregate its fees properly. The remainder of the judgment is affirmed.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
29th day of May, 2014.

23